# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> v. <br> BENJAMIN JONG REN HUNG, <br> Defendant. | Case No. 20-MJ-4508 <br> **ORDER OF DETENTION** |

On September 23, 2020, Defendant Benjamin Jong Ren Hung made his initial appearance on the Complaint filed in this matter and Deputy Federal Public Defender Erin Murphy was appointed to represent him. At Defendant's request, the detention hearing was continued to September 28, 2020, and the hearing was held on that date.

On motion by the Government pursuant to 18 U.S.C. § 3142(f) in a case involving (1) any felony not otherwise a crime of violence that involves a minor victim or the possession or use of a firearm or destructive device (as defined in 18 U.S.C. § 921), or any other dangerous weapon, or involves a

failure to register under 18 U.S.C. § 2250 and (2) a serious risk that the defendant will flee, the Court finds that no condition or combination of conditions will reasonably assure the safety of any other person and the community.[1]

Defendant is charged with conspiracy to transport firearms interstate and make a false statement in the acquisition of firearms in violation of 18 U.S.C. § 371. The Court has considered: (a) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (b) the weight of evidence against the defendant; (c) the history and characteristics of the defendant; and (d) the nature and seriousness of the danger to any person or the community. *See* 18 U.S.C. § 3142(g). The Court has also considered the Complaint and supporting Affidavit of FBI Special Agent Diamond Outlaw, the Government's Notice of Request for Detention, the Pretrial Services Reports and Recommendations of Detention prepared on September 23 and 25, 2020, and the arguments of counsel at the hearing.

The Complaint alleges that on May 31, 2020, Defendant intentionally drove his truck adorned with flags associated with far-right extremist and militia groups into a crowd of peaceful protestors on a street in Pasadena, California. [Affidavit ¶¶ 5, 25, 26.] Defendant's truck came to a stop behind three to four other cars waiting to make slow U-turns because the intersection was blocked by protestors. Defendant blared a loud train-like horn, causing the cars in front of his truck to move out of the way. Defendant's truck

---

[1] In this matter the Government is not entitled to a rebuttable presumption that no condition or combination of conditions will reasonably assure the Defendant's appearance as required and the safety of any person and the community. *See* 18 U.S.C. § 3142(e)(2).

2

accelerated rapidly as it drove toward the crowd, and the protestors as well as two plain-clothed Pasadena Police Department (PPD) detectives sprinted to avoid being struck. [Affidavit ¶¶ 19-22.] Defendant's conduct endangered the protesters and the PPD detectives. Defendant's argument that a reasonable interpretation of these events is that he was trying only to get people to move out of the way is unpersuasive. A reasonable interpretation of these events is that Defendant wanted the cars to move out of his way so he could accelerate toward the crowd. This interpretation is supported by Defendant's statement and conduct before May 31, 2020. On May 29, 2020, when cell-site records placed Defendant's phone in downtown Los Angeles in the vicinity of protests, Defendant sent a text message to a group of associates stating, "Antifa has been avoiding me or something. I can never see to find them when I'm out war rigging??" [Affidavit ¶ 33(b).] As the license plate of Defendant's truck reads "WAR RIG" [Affidavit ¶ 25], the statement indicates that Defendant was driving his truck looking for protestors.

At the hearing, Defendant argued that although he was arrested for attempted assault with a deadly weapon, he is charged only with misdemeanor possession of a loaded firearm [see Affidavit ¶ 24], which suggests that local authorities do not view his conduct as presenting a significant danger. The Court finds that Defendant's conduct in accelerating a large truck toward a crowd in a manner that caused the people in that crowd to sprint out of the way to avoid being run over is dangerous.

The items that PPD subsequently found in the truck also demonstrate that defendant presents a danger to the community. Those items included (1) a fanny pack containing a loaded Glock 26 9mm semiautomatic handgun with a 17-round magazine, a loaded 15-round magazine, and a trigger guard; (2) an 18-inch machete; and (3) an 18-inch metal pipe. [Affidavit ¶ 24.] The

3

Glock is not registered to Defendant; it is registered to a friend of Defendant's who purchased it in Oregon with the representation that he was the actual transferee of that firearm. [Affidavit ¶ 37.]

Defendant had communicated with several associates about acquiring ammunition and firearms accessories outside California and having them transported into California. On April 30, 2020, he exchanged messages with an associate about buying gun parts and assembling homemade assault rifles not compliant with California gun laws, specifically referring to "Ghost guns." [Affidavit ¶¶ 59, 62.] Defendant has no legal firearms registered in California. [Affidavit ¶ 51; 9/23/2020 PSA Report, p. 4.] His iCloud records and purchase histories confirm that he was amassing an arsenal of weapons, ammunition and tactical equipment at his residences and at his family's vineyard in Lodi, California, and that he continued to ship firearms components to his Lodi residence after his arrest by PPD for his May 31, 2020 conduct. [Affidavit ¶¶ 35, 66-69.]

A search warrant was executed at Defendant's residence and his family's vineyard in Lodi; two pistols and seven rifles were found at the residence, and ten rifles, ten pistols, and 60,000 rounds of ammunition were found at the vineyard, which also contained a tactical training ground with target dummies. [9/23/2020 PSA Report, p. 4; 9/25/2020 PSA Report p. 2.] At Defendant's residence in San Marino, California, law enforcement found the firearm possessed by Defendant on May 31, 2020, and two backpacks containing tactical blades, a medical supply kit, a gasmask, and a tourniquet. In total, 29 firearms and over 60,000 rounds of ammunition were seized at the searched property. Law enforcement did not find two of the three firearms that Defendant allegedly obtained in March 2020 in Oregon and illegally transported to California. [Affidavit ¶¶ 52-57; 9/25/2020 PSR Report p. 2.]

1   At the hearing, Defendant sought release on a proposed bond of
2   approximately $3.5 million that would include affidavits of surety justified by
3   approximately $2.8 million of equity in his parents' home; $400,000 of equity
4   in property belonging to his brother; $200,000 cash; $50,000 cash from a
5   member of the city council of Defendant's home town; and $75,000 cash from
6   Defendant's wife (who accompanied him in the truck on May 31, 2020).
7   Defendant also proposed that two third-party custodians would supervise his
8   compliance with strict release conditions.  The Court finds that this bond
9   package combined with strict release conditions could mitigate the risk that
10  Defendant would not appear in court as required to face the charges in this
11  case, as his family and friends would forfeit significant resources if Defendant
12  fled.  However, this bond package does not mitigate the risk of danger that
13  Defendant presents to others and to the community, as set forth above.[2]
14  Defendant has demonstrated by his actions and statements that he presents a
15  significant danger to the public.

16   IT IS THEREFORE ORDERED that the Defendant be detained until
17  trial.  The Defendant will be committed to the custody of the Attorney General
18  for confinement in a corrections facility separate, to the extent practicable,
19  from persons awaiting or serving sentences or being held in custody pending
20  appeal.  The Defendant will be afforded reasonable opportunity for private
21  consultation with counsel.  On order of a Court of the United States or on

---

[2] At the hearing, the government noted that one of the proposed sureties, Defendant's wife, initially denied that Defendant had firearms, and that Defendant used properties owned by his parents, also proposed sureties, to store firearms and engage in firearms practice.  The Court also notes that Defendant continued acquiring firearms components after his arrest on May 31, 2020.  This conduct was not prohibited by the bond in his state case; however, it demonstrates that being arrested after driving toward a crowd with a loaded firearm in his truck did not deter Defendant from continuing to amass weapons.

request of any attorney for the Government, the person in charge of the corrections facility in which Defendant is confined will deliver the Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding. *See* 18 U.S.C. § 3142(i).

Dated: October 08, 2020

*Patricia Donahue*
_____
PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE

6