Stephen G. Larson (SBN 145225)
slarson@larsonllp.com
Hilary Potashner (SBN 167060)
hpotashner@larsonllp.com
Jerry A. Behnke (SBN 180462)
jbehnke@larsonllp.com
Daniel R. Lahana (SBN 305664)
dlahana@larsonllp.com
**LARSON LLP**
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Tel.: (213) 436-4888
Fax: (213) 623-2000

Attorneys for Defendant,
BENJAMIN JONG REN HUNG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BENJAMIN JONG REN HUNG,<br><br>Defendant. | Case No. 2:20-CR-452-SVW<br><br>*Honorable Stephen V. Wilson*<br><br>**DEFENDANT BENJAMIN HUNG'S POSITION RE: SENTENCING; EXHIBITS**<br><br>**REDACTED - PARTIALLY FILED UNDER SEAL PURSUANT TO COURT ORDER DKT NO. 85 FILED OCTOBER 14, 2021** |

## I. INTRODUCTION

Benjamin Hung is 29 years old. He is a loving husband, a dedicated father, a respectful son, and a caring brother. He is a deeply religious person with a strong work ethic and great appreciation for his community and our country at large. He is also a young man who made a series of juvenile and shortsighted decisions that have placed him before this Court for sentencing.

Mr. Hung has pleaded guilty to multiple counts of firearms violations relating to bringing firearms across state lines, making false statements in the purchase of firearms, and being in possession of unregistered firearms. These firearms were primarily seized from Mr. Hung's family's vineyard in Lodi. Mr. Hung initially began acquiring firearms for recreational uses, such as hunting and target practice, but he eventually began to view his collection of, and facility with, firearms as a way to ensure that his family would be protected and defended in the event of civil unrest and violence.

Mr. Hung profoundly regrets violating the law. As he explains in his own words:

> First and foremost, I would like to deeply apologize to the Court for having broken the law. I feel very responsible for my past actions and recognize that I would not be in my current situation had I made wiser decisions. My time in detention at MDC along with this past year has given me ample time and opportunity to reflect on and grow beyond my own mistakes. How I behaved and acted in the past was immature and is a poor reflection of my character.

(Exhibit A, Benjamin Hung Letter to the Court.)

Mr. Hung knows that he should not have taken any shortcuts with the purchasing of firearms and he should not have been in possession of any illegal firearms. While he cannot change the past, he is committed to demonstrating his great respect for the rule of law each and every day moving forward. He is determined to

prove to this Court that he is now, and will continue to be, a law-abiding, thoughtful, and productive member of our society. (See Exhibit A, Benjamin Hung Letter to the Court.)

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████
████████ ██████████████████ ████████████████ ████
██████ ████████████████████████████ ██████████████."
█████████████████████████ █████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████ As noted by Probation, Mr. Hung "has shown respect for the law." (Probation Recommendation Letter, p. 5.) Moreover, he "has been in complete compliance with the conditions of his bond and was cooperative with the Probation Office during the presentence investigation." (*Id.*)

Mr. Hung is no longer the immature person who made the decisions that now bring him before this Court. His two months of pre-trial detention at the MDC during the height of COVID-19, the sobering effect of facing federal criminal charges, and the birth of his daughter have had a tremendous impact on Mr. Hung. He is now a more mature version of himself, ready to accept the consequences of his prior actions, while simultaneously promising the Court and the government that he will never again break the law.

Mr. Hung respectfully requests that the Court impose the following sentence:

- Time-served, followed by three years of supervised release;
- One year of home detention;
- 360 hours of community service;
- Counseling; and
- The other standard conditions of supervised release.

For the reasons set forth below, Mr. Hung respectfully submits that this sentence would meet the ends of justice. Mr. Hung has taken responsibility for his actions—and he must suffer the consequences; including a felony record, losing his ability to possess firearms, forfeiting certain civil rights, and other consequences. At the same time, further incarceration is not necessary as a specific deterrence to Mr. Hung nor would it serve the public interest. Instead, further incarceration in this case would remove him unnecessarily from his young daughter's life, burden the government with the cost associated with incarceration, and curtail his ability to continue to work to support himself and his family.

## II. APPLICABLE LAW

In determining the appropriate sentence for Mr. Hung, the Court must consider all of the statutory sentencing factors set forth at 18 U.S.C. § 3553(a); *United States v. Booker*, 543 U.S. 220 (2005). The district court may not presume that the advisory guideline range is the reasonable or appropriate sentence. *United States v. Gall*, 128 S.Ct 586, 596–97 (2007); *see also United States v. Rita*,

127 S.Ct. 2456, 2465 (2007). In fact, "extraordinary circumstances are not needed to justify a sentence outside the range." *United States v. Ruff*, 535 F.3d 999, 1002 (9th Cir. 2008). Instead, the Guidelines are only one of many factors for the Court to consider when imposing sentence. In the end, the Court must impose a reasonable sentence based on the individual defendant and the facts and circumstances of the particular case at hand, that is "sufficient, but not greater than necessary," to achieve the statutory purposes of sentencing. 18 U.S.C. § 3553(a).

## III. RELEVANT FACTORS IN THIS CASE

### A. Mr. Hung's History and Characteristics

The Pre-Sentence Report ("PSR") contains a thorough description of Mr. Hung's background. The attached letters and ▮▮▮▮▮▮▮▮▮▮ provide additional details and descriptions of Mr. Hung's upbringing and character. A few themes emerge from these materials.

#### 1. Mr. Hung Is Part of a Loving, Tight-Knit, and Community-Minded Family

Mr. Hung is the third son of Chinese immigrant parents. (See PSR ¶ 54.) He was born in Southern California into a loving and traditional family. At the age of four, he moved to San Marino—where he currently lives with his parents, wife, and young daughter. (PSR ¶ 61.) He attended San Marino public schools from kindergarten through the 12th grade, graduating from the local high school. As a student, he played football and participated in extracurricular activities, including student government. He served as the class president during his junior year and as class vice-president during his senior year. ▮▮▮▮▮▮▮▮▮▮ He graduated from San Marino High School with a 3.8 GPA in 2010. (PSR ¶ 56.)

While Mr. Hung was growing up, his family was an integral part of the San Marino community. Mr. Hung himself was well liked and appreciated by many in the town. In fact, twelve individuals from San Marino, each of whom has known

him for more than 15 years, submitted and signed a collective letter of support—in which they refer to Mr. Hung as "Benny." They describe their view of Mr. Hung as follows:

> During our relationship with Benny for many volunteer projects, we have experienced that he always shows up on time, works hard, and carries his family's important values in serving the community in a polite, respectable manner. Benny grew up in San Marino in a very reputable family committed to serving the San Marino Unified School District and the Greater San Gabriel Valley communities. During high school, Benny was a hardworking student and an outstanding football player who helped the team and lifted the families in the community of San Marino.
>
> By knowing Benny's wonderful attitude, character, and his genuine heart for serving others, it is our hope that you take note of this letter of recommendation for Benny's case, as we truly believe Benny is not and has never been a threat to our community.

(Exhibit C, Community Letter to the Court.)

Family has always been important to Mr. Hung. His parents have been married more than 37 years. They instilled in him a deep appreciation of his heritage and what his ancestors went through to give him the life that he now has.

[lines 22–28 redacted]

[redacted]

He also learned about the persecution that his grandparents faced when they converted to Christianity and the resolve they showed to hold firm to their religious convictions. Their commitment to their faith is reflected in Mr. Hung himself. He grew up in a deeply religious environment, where the Church and religious instruction were integral to his upbringing. (PSR ¶ 55.) [redacted]

[redacted] As his father explained in his letter to the Court, the family looks to the Bible for guidance during the most difficult times. (See Exhibit D, Isaac Hung Letter to the Court.)

These stories of his ancestors' struggles, and the life-threatening traumas they endured have shaped Mr. Hung in other ways as well. (*Id*.) They have solidified within him the importance of tight family cohesion and preparedness. They have also fostered a special appreciation and patriotism for the United States. Mr. Hung's parents and grandparents taught him that the United States provided opportunities, freedom, and stability not available anywhere else—as long as one was willing to work hard enough.

### 2. Mr. Hung Has a Strong Work Ethic

Growing up, Mr. Hung witnessed his parents work tirelessly and with an entrepreneurial spirit. They owned and managed apartment buildings in Southern California, and later expanded into viticulture in Lodi, California, and mobile home parks in Oregon.

After high school, Mr. Hung attended college at the University of Washington. He studied business and marketing. He then decided that he would

learn best from the hands-on experience of working with his family. (PSR ¶ 57.) He left college after two years and dove headfirst into the family business. ███████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ He started by working at the family's RV parks and apartment complexes in Oregon. And then in 2014, he moved into managing and operating the property in Lodi. The Lodi property has a 100-acre grape growing operation that produces fruit for both red and white wine. Currently, most of those grapes are sold to other wine producers. But Mr. Hung believes that the vineyard can transition into producing its own good wine at a profit. To that end, he has begun studying viticulture and his goal is to create his family's own wine label. (PSR ¶ 61.) In sum, he remains a passionate and integral part of his family's business.

### 3. Mr. Hung Is a Beloved Husband and Friend

Mr. Hung is a caring and loving person. He is supported by his wife and his circle of friends. His wife, Emily, provides a window into Mr. Hung's character:

> I would also like to emphasize that Benny loves his country deeply, and is a true and responsible patriot. He has been this way ever since I've known him back in middle school, and I know his commitment to our democracy and 'rule of law' are truly important to him. In short, as a man of faith and family, Benny has always loved the constitution and legal foundation that make this country great. And he is a man of God first, a responsible American patriot second and a loving husband and family member above all. He stands firmly in the values and beliefs of our founding fathers, that all men and women are equal and have a constitutional right to pursue happiness and liberty. This was the very notion that drove both my family and Benny's family to immigrate to and embrace this country, that we all love . . . I would only add that I

know that Benny is not any kind of political extremist or supremacist, whether in his public discourse or in our years of private discussion.

As Benny's wife and life partner, I am writing to implore you to understand that Benny is truly kind and a wonderful family man.

(Exhibit E, Emily Hung Letter to the Court.)

Daniel Moas, another close friend of Mr. Hung, explains in a letter to the Court that he has "learned so much from Benny in my lifetime, but it really is the love that he passes on to everyone around him which is what makes him not only one of my best friends, but one of the best guys I have ever had the pleasure of knowing." (Exhibit F, Daniel Moas Letter.)

James Gardner, an accomplished attorney who has been close with the Hung family for many years, provides his perspective on Mr. Hung:

> Speaking more personally, I have known Benny Hung as a personal friend, and a kind and loving family member for some 15 years . . . [w]e have often spent time together on the Oregon Coast, where we go hiking, beach combing, crabbing and fishing together within the natural beauty of the Oregon coast and forests. So I can say with conviction that I have gotten to know Benny Hung well over many years, and come to know him as a good, kind and valued friend who would never harm anyone…and who will spend his years in life dedicated to his wife and baby daughter.

(Exhibit G, James Gardner Letter to the Court.)

Neighbors and more casual friends also express positive thoughts about Mr. Hung. Dr. Chan explains that he "watched Benjamin grow up" and his "observation is that he is always kind to everyone and never loses [his] temper or [is] mean to anyone." (Exhibit I, Kenneth Chan, M.D., Letter to the Court.) Even

his wife's former neighbor, Kimberly Dear, wrote a letter to express her views about Mr. Hung:

> Benny is the kind of person that just offers to help, even if not solicited. He will go out of his way to help carry your groceries in the house, he always asks how you and your family are doing and is generous with his time. Benny never makes you feel like you are an imposition. I am very grateful for having them all in our neighborhood, and Benny is a welcomed addition to the Shen family. He is dependable, thoughtful, and deserves only good things to happen in his life . . . Benjamin Hung has a heart of gold.

(Exhibit H, Kimberly Dear Letter to the Court; see also Exhibit J, Richard Esterman Letter to the Court.)

4. [redacted]

1 ███████████████████████████████████
2 ███████████████████████████████████
3 ███████████████████████████████████
4 ███████████████████████████████████
5 ███████████████████████████████████
6 ███████████████████████████████████
7 ███████████████████████████████████
8 ███████████████████████████████████
9 ████████████████████████, ████████
10 ███████████████████████████████████
11 ████████████████████████
12 (██████████████████████████████████
13 █████████████████████████
14 ███████████████████████████████████
15 ███████████████████████████████████
16 ██████████████████████████████
17 ███████████████████████████████████
18 ███████████████████████████████████
19 ████████████████ █████████████████
20 ███████████████████████████████████
21 ████████████████████

    **B.** **The Nature and Circumstances of the Offense and the Need to Reflect the Seriousness of the Offense**

        1. **The Particular Facts Surrounding the Charged Offenses Support a Mitigated Sentence**

The PSR references the general reasons for firearm regulations and laws—to protect citizens—and how violations of those laws may endanger public safety. While this is of course true, it cannot be ignored that the facts here are categorically

different from many other cases that fall within the same statutes and guidelines. Specifically, the purpose of regulating firearm sales and transportation is "'to make it possible to keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'" *United States v. Moore*, 109 F.3d 1456 (9th Cir. 1997) (internal citations omitted). Mr. Hung was a naïve and immature young man with no criminal history. He could have—and did—legally own firearms. He also worked between Oregon and California, the former having less firearm restrictions and regulations than the latter. Fortunately, Mr. Hung's actions, while regrettable and unlawful, did not harm anyone—there was no victim. (See PSR ¶ 20.)

### 2. The May 31, 2020 Pasadena Incident Does Not Justify a Custodial Sentence in this Case

It is anticipated that the government may raise the May 31, 2020 incident in Pasadena as a factor in sentencing Mr. Hung. The incident in question occurred when Mr. Hung drove to a protest in Pasadena at the intersection of Fair Oaks and Colorado. As he accelerated towards the intersection, a protester threw an object at his truck. He then sounded his horn, stopped just before the intersection, and then drove through the intersection, making a left turn away from the protest. While driving past some demonstrators, Mr. Hung caused his truck to emit a large amount of vehicle exhaust. No one was injured.

First, the Court should decline to consider this incident because its relevance is minimal—at most—to the case before the Court. In the event the Court does consider the incident to be relevant, however, the defense requests that Court view the recorded video of it. (Exhibit K, Video Footage.) This video clearly demonstrates that Mr. Hung used his horn to move people out of the intersection prior to driving through it. Nonetheless, Mr. Hung regrets his actions that day and does not have the same mindset today as he did when the COVID-19 pandemic had removed all normalcy from our day-to-day life and the streets were teaming with

1 protests and civil unrest. ████████████████████
2 ████████████████████████████████████████
3 ████████████████████████████████████████
4 ████████████████████████████████████
5 ████████████████████████████████████████
6 While that in no way justifies his actions, it should help assuage that Mr. Hung does
7 not pose an ongoing threat to the community, he is not likely to reoffend, and
8 additional incarceration is not necessary to deter him.

        3.    <u>Mr. Hung's Text Messages Do Not Support a Custodial Sentence in this Case</u>

It is also anticipated that the government will point to various text messages to suggest Mr. Hung harbors a "violent ideology." Mr. Hung's political views are neither radical nor violent, and he has never harmed nor attempted to harm anyone, on May 31 or any other date. Nor is he a threat to others. Mr. Hung has no history of violent behavior against anyone. There is no evidence that he got into fights as a student; there is no evidence that he has initiated any physical altercations as an adult; and in fact, there is no evidence that he has been physically assaultive towards anyone at any point in his entire life.

[lines 19–28 redacted]



Moreover, it is also important to note that texting is a primary mode of communication for those in Mr. Hung's generation and none of the texts in evidence chronicle any physical violence or racial animus. Had Mr. Hung committed violent acts or incited others to do so, there would surely be texts to prove it. But there are none. In short, Mr. Hung's text messages do not show he is violent or dangerous – because he is not.

### C. Just Punishment, Deterrence and Public Protection

When debating the meaning of "just punishment," the Senate acknowledged a punitive purpose but stressed the weight of rehabilitation and criminal records in determining what was just in any given defendant's circumstances.[1] Mr. Hung's

---

[1] *See* Continuing Appropriations 1985-Comprehensive Crime Control Act of 1984, S.REP. NO. 225, 98th Cong., 2d Sess. 67-68 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3250-51 at 75, note 162 ("It has been suggested that one aspect of this purpose of sentencing, 'just deserts,' should be the sole purpose of sentencing . . . While the Committee obviously believes that a sentence should be 'just' and that the punitive purpose is important, it also believes that it is consistent with that purpose to examine the other purposes of sentencing set forth in § 3553(a)(2) in determining the type and length of sentence to be imposed in a particular case. Rehabilitative considerations may call for a sentence to probation with appropriate conditions where a sentence to a term of imprisonment in other circumstances might be 'just'; incapacitation for an extended period of an offender with a serious

lack of any prior contact with the criminal justice system and his good conduct over the past year demonstrate that the combination of home detention, community service, and supervised release amounts to just punishment.

In many ways, Mr. Hung's punishment began when he was detained for two months under the initial detention order. During that time, he missed the birth of his firstborn daughter. He was also jolted by the realities of jail: first being placed in solitary confinement for three weeks before sharing a cell with two self-identified street gang members for 24 hours a day, all due to COVID-19. This experience provided Mr. Hung with an intimate crash course on a part of society previously unknown to him.

Mr. Hung's incarceration at the MDC was a life-altering experience for him, in some ways for the better. ████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████
██████████████ ██████████

But further incarceration is not necessary to promote a just punishment or to deter Mr. Hung from committing future crimes. Moreover, additional punishment would have the unintended consequence of adversely impacting his young daughter by separating her from him during her early formative years. Current research strongly suggests that long term emotional regulation is actively developed through

---

criminal history might be appropriate where such a long term would not be 'just' if the offender's criminal record were not considered").

the first two years of a child's life, which is greatly facilitated by the presence of both parents.

### D. The Need to Provide the Defendant with Education or Vocational Training, Treatment, Medical Care, or Correctional Treatment

A term of supervised release with the conditions suggested above would promote Mr. Hung's rehabilitation. It would allow him to be an engaged father, contributing member of the community, and a lawful citizen—prosocial goals to which he is resolutely committed.

### E. The Advisory Guidelines

Mr. Hung agrees that the total offense level is 18, as stipulated in the plea agreement and reflected in the PSR. (See PSR ¶ 38.) Furthermore, he agrees that he falls within a criminal history category I as he has no juvenile or adult convictions. (See PSR ¶¶ 45, 46.) Mr. Hung does, however, request the following amendments to the content of the PSR:

Paragraph 52: Mr. Hung's birthday should be corrected to read May 18, 1992;

Paragraph 18: "Suppressors (silencers)" should be deleted from this paragraph as it is not supported by the discovery or the plea agreement in this matter;

Paragraph 40: References to "QAnon conspiracy theories" should be deleted because Mr. Hung is not a member of the "QAnon movement"; and,

Paragraph 65, footnote 4: This footnote should be deleted as it erroneously states that defense counsel opposes "mental health and/or anger management counseling." Mr. Hung is amenable to mental health counseling.

## IV. CONCLUSION

For the reasons above, Mr. Hung respectfully requests that the Court impose a sentence of time-served to be followed by three years of supervised release with the conditions of supervision to include one year of home detention and 360 hours of community service.

Dated: October 11, 2021　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　LARSON LLP


By: /s/ *Hilary Potashner*
　　Stephen G. Larson
　　Hilary Potashner
　　Jerry A. Behnke
　　Daniel R. Lahana
Attorneys for Benjamin Jong Ren Hung